**SUPERIOR COURT**
OF THE
**STATE OF DELAWARE**

VIVIAN L. MEDINILLA
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DE 19801-3733
TELEPHONE (302) 255-0626

January 25, 2017

Tiffany M. Shrenk, Esq.
MacElree Harvey, Ltd.
5721 Kennett Pike
Centreville, DE 19807
*Attorney for Plaintiff*

Victor F. Battaglia, Esq.
Biggs and Battaglia
921 N. Orange Street
P.O. Box 1489
Wilmington, DE 19899
*Attorney for Defendant CPS*

Bradley J. Goewert, Esq.
Thomas J. Marcoz, Jr., Esq.
Marshall Dennehey Warner
Coleman & Goggin
1007 N. Orange Street, Suite 600
Wilmington, DE 19899
*Attorneys for Defendant Estate*

Re: *Newborn v. Christiana Psychiatric Services, P.A., et al.*
    *Case No.: N16C-05-047 VLM*

Dear Counsel:

This is the Court's ruling on Defendant Christiana Psychiatric Services, P.A. ("CPS")'s Motion to Dismiss in the above-captioned case. For the reasons stated below, CPS's Motion to Dismiss is **DENIED**.

**Factual and Procedural Background**

This is a wrongful death and medical malpractice action against a deceased psychiatrist, Dr. Jorge A. Pereira-Ogan ("Dr. Ogan"), and his former practice group, CPS, alleging, *inter alia*, that Dr. Ogan negligently prescribed Plaintiff's decedent, Lindsay Ballas, a sample medication of Brintellix that caused her to commit suicide in August 2014. CPS moves to dismiss the Complaint for failure to state a claim upon which relief may be granted. Defendant Estate of Dr. Ogan takes no position on the Motion.

The Complaint states three claims of relief. Count I asserts a negligence claim against Dr. Ogan. Count II asserts a negligence *per se* claim against Dr. Ogan. Count III, the subject of the present Motion, is a claim of negligence against CPS.

Count III, while titled simply "negligence," alleges two distinct claims: one of *direct liability* against CPS (*i.e.*, a failure to supervise and monitor Dr. Ogan), and another of *vicarious liability* (*i.e.*, Dr. Ogan acted as an employee and/or agent of CPS and committed negligence within the scope of this relationship).

Count III of the Complaint states that: "At all times relevant hereto, Dr. Ogan was an employee and/or agent of [CPS]."[1] Dr. Ogan allegedly used a prescription pad when writing prescriptions to Ms. Ballas that bore CPS's name and address.[2] The samples of the Brintellix provided to Ms. Ballas before her death were CPS samples.[3] CPS allegedly failed to "adequately instruct Dr. Ogan as to his statutory duties," and "failed to monitor the distribution of potentially dangerous medications to Dr. Ogan."[4] CPS "knew or should have known that Dr. Ogan provided prescription medications to individuals, including Decedent, in violation of the standards of care and/or the applicable statutory duties."[5]

---

[1] Complaint at ¶ 42.

[2] *See id.* at ¶ 43.

[3] *See id.* at ¶ 44.

[4] *Id.* at ¶¶ 45, 47.

[5] *Id.* at ¶ 46.

2

CPS's Motion was filed on October 24, 2016. Plaintiff filed a brief in opposition to the Motion on December 9, 2016. CPS filed a reply brief on December 21, 2016. Oral arguments were heard on January 9, 2017. The Motion is now ripe for decision.

## Standard of Review

Defendant moves for dismissal under Superior Court Rule 12(b)(6). A motion to dismiss generally considers only that which is found in the complaint.[6] In this case, in support of its Motion to Dismiss, CPS asks the Court to consider three sets of documents outside the Complaint: (1) two 1099s CPS issued to the IRS in 1999 and 2002 classifying Dr. Ogan as an independent contractor; (2) a copy of a 1996 phonebook that lists Dr. Ogan's address as his Trolley Square office; and (3) a 1996 Delaware business license for Dr. Ogan's practice at the same address.

Where extrinsic evidence is considered, the Court usually converts the motion to a motion for summary judgment.[7] If the Court does convert the motion, the Court should advise the parties and give a reasonable opportunity to present pertinent material according to Rule 56.[8] However, it does not follow that the "floodgates to discovery" are open simply because an extrinsic document is presented on a motion to dismiss.[9]

There are two exceptions to the general rule regarding extrinsic evidence on a motion to dismiss.[10] First, "where an extrinsic document is integral to a plaintiff's claim and is incorporated into the complaint by reference," the Court may consider this in the motion.[11] Second, "where the document is not being

---

[6] *See In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (citations omitted).

[7] *See id.* (citing *Malpiede v. Townson*, 780 A.2d 1075, 1090 (Del. 2001)).

[8] *See id.* at 168-69 (citations omitted).

[9] *Malpiede*, 780 A.2d at 1091.

[10] *See Furman v. Del. Dep't of Transp.*, 30 A.3d 771, 774 (Del. 2011) (*Vanderbilt Income & Growth Assocs. v. Arvida/JMB Managers*, 691 A.2d 609, 613 (Del. 1996)).

[11] *Id.*

3

relied upon to prove the truth of its contents," then the Court may likewise consider this document on a motion to dismiss.[12]   Nevertheless, "The trial court may also take judicial notice of matters that are not subject to reasonable dispute."[13]

Here, the IRS documents contain a classification of Dr. Ogan's relationship with CPS made solely by CPS.  They are presented to prove the truth of the matter asserted: that Dr. Ogan was an independent contractor.  As such, they do not fit into either of the two above exceptions.  Further, there is no *per se* rule to determine agency (see *infra*), and the parties' understanding of the nature of the putative agency relationship is only one sub-factor of many non-exclusive factors.[14]   Because the IRS documents are open to reasonable disagreement, they are not susceptible to judicial notice.  Therefore, the Court will not consider them on the Motion to Dismiss.[15]

The Court declines to convert the Motion to one for summary judgment based on the presentation of the extrinsic documents.  Discovery has only just begun in this case and it would be premature to convert the Motion to a summary judgment motion.  Thus, the Motion will remain one to dismiss the Complaint for failure to state a claim upon which relief may be granted.

Under Rule 12(b)(6), all well-pleaded allegations in the complaint must be accepted as true.[16]   Even vague allegations are considered well-pleaded if they give

---

[12] *Id.*

[13] *In re Gen. Motors*, 897 A.2d at 169 (citing D.R.E. 201(b)).  Pursuant to D.R.E. 201(b), a judicially-noticed fact must pertain to a subject not open to reasonable disagreement that is either generally known to the Court's territorial jurisdiction, or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  D.R.E. 201(b).

[14] *See* RESTATEMENT (SECOND) OF AGENCY § 220 (1958).

[15] The other two sets of documents may be subject to judicial notice.  While not open to reasonable disagreement and capable of ready determination to sources whose accuracy cannot—and has not—been challenged, the Court declines to take these documents into consideration in the present Motion.

[16] *See Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).  *See also* DEL. SUPER. CT. CIV. R. 12(b)(6).

4

the opposing party notice of a claim.[17] The Court must draw all reasonable inferences in favor of the non-moving party;[18] however, it will not "accept conclusory allegations unsupported by specific facts," nor will it "draw unreasonable inferences in favor of the non-moving party."[19] Dismissal of a complaint under Rule 12(b)(6) must be denied if the non-moving party could recover under "any reasonably conceivable set of circumstances susceptible of proof under the complaint."[20]

## Discussion

### *Plaintiff's Vicarious Liability Claim*

CPS argues that dismissal is appropriate because discovery into Dr. Ogan's relationship with CPS would not reveal that Dr. Ogan was anything more than an independent contractor.

Whether a principal-agent relationship exists is determined on a case-by-case basis.[21] "The Delaware courts have 'recognize[d] that no single rule could be laid down to determine whether a given relationship is that of [a servant to a master] as distinguished from an independent contractor."[22] Instead, that determination is typically left to the factfinder.[23] Delaware courts look to the Restatement (Second) of Agency § 220 (1958) to determine whether "the actual tortfeasor is a servant or an independent contractor."[24]

---

[17] *See In re Gen. Motors*, 897 A.2d at 168 (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002)).

[18] *See id.* (citing *Malpiede v. Townson*, 780 A.2d 1075, 1082 (Del. 2001)).

[19] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011) (citations omitted).

[20] *Spence*, 396 A.2d at 968 (citing *Klein v. Sunbeam Corp.*, 94 A.2d 385 (Del. 1952)).

[21] *See Murphy v. Bayhealth, Inc.*, 2005 WL 578823, at *3 (Del. Super. Feb. 4, 2005).

[22] *Id.* (quoting *White v. Gulf Oil Corp.*, 406 A.2d 48, 51 (Del. 1979)).

[23] *See id.* (quoting *Fisher v. Townsends, Inc.*, 695 A.2d 53, 59 (Del. 1997)).

[24] *See Fisher*, 695 A.2d at 59 (quoting RESTATEMENT (SECOND) OF AGENCY § 220 (1958)).

CPS cites *Smyre v. Amaral* repeatedly as representative of Delaware's pleading standard.[25] It is not. *Smyre* is a federal case involving the federal pleading standard of *Twombly* and *Iqbal*: "plausibility."[26] The Delaware Supreme Court has expressly rejected the federal pleading standard, instead opting for Delaware's long-standing "conceivability" standard for motions to dismiss.[27] Where the complaint states claims that are reasonably conceivable from the facts alleged, the Court may not dismiss the complaint on a motion to dismiss.[28]

The Court finds that a conclusive determination of an agency relationship in this case is premature. Taking the facts in light most favorable to Plaintiff, she has alleged reasonably conceivable allegations that Dr. Ogan and CPS were in an employer-employee relationship during at least a portion of the allegations.

CPS's second argument for dismissal of the vicarious liability claim deals with scope of employment. At oral argument and for purposes of this Motion only, CPS conceded that even if it and Dr. Ogan stood in an employer-employee relationship during the relevant period of time, Dr. Ogan's alleged conduct fell outside the scope of this employment relationship and obviates the imposition of liability on CPS for his actions. The Court disagrees.

An employer may be vicariously liable for the torts of the employee where the employee's tortious conduct is within the scope of the employment relationship.[29] Delaware courts look to the Restatement (Second) of Agency § 228

---

[25] 2013 WL 3306141 (D. Del. June 28, 2013) (granting motion to dismiss two vicarious liability claims against contracted medical service company on basis that tortfeasor's actions fell outside scope of employment under Delaware law).

[26] *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

[27] *See Cambium Ltd. v. Trilantic Capital Partners III L.P.*, 36 A.3d 348, 2012 WL 172844, at *1-2 (Del. Supr. Jan. 20, 2012) (TABLE); *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536-37 (Del. 2011) (declining to adopt "plausibility" standard). *See also Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808, 813 n.12 (citations omitted) ("The *Twombly/Iqbal* plausibility standard is more rigorous than Delaware's counterpart pleading standard. Long standing Delaware case law holds that a complaint will survive a motion to dismiss if it states a cognizable claim under any 'reasonably conceivable' set of circumstances inferable from the alleged facts. These two standards are significantly different.").

[28] *See Cambium Ltd.*, 2012 WL 172844, at *1-2.

[29] *See Fisher*, 695 A.2d at 58.

6

to determine whether an employee was acting within the scope of employment.[30] Where the employee's conduct is motivated, at least in part, by a desire to benefit himself or a third party, the tortious conduct may still fall within the scope of employment if the employer's business "actuates the employee to any appreciable extent."[31] "The mere fact that the primary motive is to benefit himself or a third person does not cause the act to be outside the scope of employment."[32]

CPS repeatedly characterizes the allegations against Dr. Ogan as Dr. Ogan helping a "friend" in Ms. Ballas and not a "patient." It further argues that Dr. Ogan's conduct was that of a "sexual predator" or that he is alleged to have committed acts of "sexual abuse" against Ms. Ballas. Therefore, CPS claims that Dr. Ogan "was acting for his personal gratification, and to help a friend," which constitutes conduct falling outside the scope of the employment relationship.

The Complaint does not allege sexual abuse. Taking the facts in a light most favorable to Plaintiff, the allegations involve conduct squarely within the scope of Dr. Ogan's alleged employment: prescribing a patient medication for a medical condition. CPS's characterization of Ms. Ballas and Dr. Ogan's relationship is an issue of fact and not a necessary conclusion of law based on the allegations in the Complaint. Moreover, the final determination of whether a doctor-patient relationship exists is typically one for a jury to decide.[33] Therefore, it cannot be said at this time that Dr. Ogan's actions were clearly outside the scope of employment.

The Court finds that Count III's claim of vicariously liability is reasonably conceivable and survives CPS's Motion to Dismiss.

---

[30] RESTATEMENT (SECOND) OF AGENCY § 228 (1958). *See Wilson v. Joma, Inc.*, 537 A.2d 187, 189 (Del. 1988) (quoting § 228).

[31] *Wilson*, 537 A.2d at 189 (citing *Best Steel Bldgs., Inc. v. Hardin*, 553 S.W.2d 122, 128 (Tex. Civ. App. 1977)) (discussing "dual purpose rule").

[32] *Id.* (citing *Hardin*, 553 S.W.2d at 128).

[33] *See Murphy v. Godwin*, 303 A.2d 668, 673 (Del. Super. 1973).

## *Plaintiff's Direct Liability Claim*

The argument for dismissal of this claim puts the cart before the horse. CPS assumes as true the nonexistence of a patient-physician relationship. It then extrapolates from this conclusion, arguing that it cannot be held liable as a professional corporation for failing to monitor or supervise Dr. Ogan's informal relationship with a "secret" friend.

The Professional Service Corporation Act ("Act"), 8 *Del. C.* §§ 601-619, includes any "qualified related professional services," which is limited to physician practice groups.[34] Section 608 specifically limits the Act's impact on the doctor-patient relationship. This section confirms that the Act does nothing to change the medical provider's professional relationship with his or her patient. Section 608 further implies that it does not change existing jurisprudence on negligence where such a claim is asserted against a physician employed by a professional corporation/practice group.

CPS argues that it is legally prohibited from interfering into Dr. Ogan's practice. However, this argument proceeds—as stated above—from a premature assumption that no agency relationship exists. Assuming there is such a relationship for purposes of this Motion, nothing in the Act exculpates CPS from *respondeat superior* liability, nor liability for its officers' own negligent conduct.

Plaintiff has stated a reasonably conceivable allegation of negligent supervision and monitoring of Dr. Ogan. The facts present an allegation CPS acted negligently by failing to supervise and monitor Dr. Ogan's prescription of dangerous medications. There is nothing in the Act that prevents the imposition of negligence on the part of the practice group where it has acted negligently in failing to monitor or supervise its own employee. As such, the Motion is denied as to Count III's direct liability claim.

## **Conclusion**

The Court finds that Plaintiff states reasonably conceivable claims of direct

---

[34] 8 *Del. C.* § 603(2)-(3) (effective Sept. 3, 2015).

8

and vicarious liability against CPS in Count III of her Complaint.  CPS's Motion is, therefore, **DENIED**.

        **IT IS SO ORDERED.**

Sincerely,

Vivian L. Medinilla
Judge

oc:    Prothonotary

9